## WRIGHT v. BOARD OF PUBLIC INSTRUCTION OF SUMTER COUNTY (No. 2).

Circuit Court, Sumter County.

September 29; 1955.

Robert J. Pleus, Orlando, and Joseph C. Young, St. Petersburg, for plaintiff.

Carroll W. Fussell, Bushnell, and Askew, Wehle, Earle, Goldner & Holley, St. Petersburg, for defendant.

T. G. FUTCH, Circuit Judge.

This is the third appearance of this cause before this court for final disposition, it has heretofore been on two trips to the Supreme Court of Florida, 48 So. 2d 912, 77 So. 2d 435.

Involved are twenty time warrants said to have been issued by the board of public instruction of Sumter County dated September 12, 1923, aggregating the total principal sum of $20,000, together with certain interest coupons attached to the several warrants.

Each warrant states specifically in the second paragraph thereof that it is issued—"in pursuance to and in compliance with the constitution and laws of the state of Florida, including specifically chapter 6654 of the Laws of Florida approved May 30, 1913." The warrants do not recite or claim any power or authority of the board of public instruction to issue them.

Chapter 6654, Laws of Florida, mentioned in the warrants, is a special Act which by its contents is limited to the board of public instruction of Sumter County—and there was then no other law, statutory or otherwise, under which the warrants could have been issued.

I would not take the time to refer to the Supreme Court opinions rendered in this matter except for the fact that certain new precedents of constitutional and statutory construction appear to have been made in and by these two opinions which I desire to get clearly fixed in my mind and, perchance, a few other lawyers might by this means have their attention called to these new precedents and

for the further reason that a discussion thereof is necessary to reveal the position in which this court is placed by reason of these opinions.

The first opinion by the Supreme Court was rendered in reversing the judgment of this court wherein the warrants were held to be void and judgment entered accordingly in favor of the defendant board of public instruction of Sumter County.

In the first opinion the Supreme Court used the principle that the constitutionality of a legislative Act is to be determined by the provisions of the constitution prevailing at the time the constitutionality is under consideration by the court and not by the constitutional provisions which were in effect at the time the Act was passed by the legislature. It also employed the principle that any action based upon any such statute is also to be measured by the constitution at the time the Act is being considered by the court and not as it existed at the time the act was done. This is true because the legislative Act involved in this case, chapter 6654, Laws of Florida, Acts of 1913, was passed by the legislature and became a law 13 years prior to the amendment of section 9 of article 12 of the constitution as quoted in full in the court's first opinion, appearing in the second column on page 915, 48 So. 2d. The reader's attention is especially invited to the comparative content of section 9 of article 12 of the constitution before and after its amendment in 1926.

In another respect, by this same opinion, the Supreme Court has vastly liberalized, if not set a new precedent, in the constitutional requirements as to the title of an Act of the legislature. In this opinion, referring to the title of the Act, the court holds that the language in the title "any other indebtedness made by or through said Board" is sufficient and all that is necessary to justify including in the Act the following provisions—"Under the provisions of this act the Board of Public Instruction of Sumter County, Florida, shall be empowered to borrow money for the purpose of constructing, repairing or furnishing suitable school buildings in the said county, and for the purpose of paying any existing indebtedness."

There is no mention in the title of any building or the construction of any buildings, but the court said that the legislature by enacting chapter 6654—"was considering the then existing and outstanding indebtedness of the board of public instruction of Sumter County and 'any other indebtedness' made or created by said board subsequent to the effective date of the Act."

The Supreme Court further said in this first opinion that— "these time warrants issued by the board in support of the public school system of the county were to be paid out of the 'common school fund' of Sumter County." There is not to be found anywhere in the title of the Act any reference to the payment of these warrants out of the "common school fund."

The title of the Act makes no mention of paying the time warrants out of *any* fund. The only mention or notice in the title relating to payment is in the last phrase thereof and clearly and succinctly calls for the issuance of time warrants only for the purpose of paying the interest and principal of the time warrants. The title reads as follows—"An Act to Authorize and Empower the Board of Public Instruction of Sumter County, Florida, to Issue Interest-Bearing Coupon Warrants for the Purpose of Borrowing Money to Liquidate Outstanding Indebtedness, and [to issue time warrants] for the Purpose of Cancelling Any Other Indebtedness Made By or Through the Said Board of Public Instruction, and [to issue time warrants] for the Purpose of Paying the Interest and Principal of the Said Interest-Bearing Coupon Warrants."

So we see that we have here enunciated at least two new principles of construction, viz.—

1. Apply the constitution as it stands at the time the matter is being considered and not as it stood when the matter under consideration took place or occurred.

2. The title of a legislative Act is sufficient if it mentions something that might result if something not mentioned in the Act were done. For instance, here we are to imagine that the school board might go in debt to build a school building. And, in such event, such indebtedness would come under the part of the title which reads—"any other indebtedness made by or through the board of public instruction."

We come now to the second opinion by the Supreme Court of Florida in this matter, reported at 77 So. 2d 435.

This cause was instituted on the law side of the circuit court in and for Sumter County by declaration in the then usual form for action on negotiable instruments on October 3, 1947, more than three years before the effective date of the "new rules" now in effect with subsequent amendments.

In his declaration plaintiff declared on the twenty time warrants *as a holder in due course* and for value and without notice of any

defense which the defendant school board might have against the warrants in the hands of the original holder.

Defendant as a defense to the action pled partial failure of consideration, notice thereof to plaintiff, and that the warrants were by their terms non-negotiable, and not chargeable with interest on either the principal or interest coupons after maturity.

Thus, the issues were formed upon which trial was duly had to the court without a jury, and the court found in favor of the defendant on both issues.

Appeal was perfected to the Supreme Court by the plaintiff and that court in its opinion in Wright v. Board of Public Instruction of Sumter County, 77 So. 2d 435, reversed this court on the question of the negotiability of the warrants. The court sustained this court on its findings of partial failure of consideration. In that opinion the court quoted from its opinion in Board of Public Instruction of *Putnam County* v. Wright, 77 So. 2d 770 (an opinion which had not then been filed)—". . . The negotiability of any instrument . . . is determined by the presence, or absence, of the legal elements of negotiability rather than by any declaration as to its nature . . . while it is the rule that an order or promise to pay an instrument only out of a particular fund renders the instrument non-negotiable, it is equally the rule that a mere 'indication of a particular fund out of which reimbursement is to be made' does not affect negotiability. Section 674.04, Florida Statutes."

A careful reading of the special Acts relating to the Putnam County warrants shows quite a different picture from that made by the special Act under which the Sumter County warrants were issued. The Putnam County Acts expressly provided that the warrants should be negotiable in all respects, while the Sumter County Act provided—"said warrants shall be issued *upon the common school fund of Sumter County, Florida.*" (Italics added.) The warrants used the words "payable out of the common school funds of Sumter County, Florida," and carry apt reference to chapter 6654, Laws of Florida, Acts of 1913, as the legal basis for the issuance and sale thereof.

Of course, it is not necessary to repeat here that under the constitution and laws as they then existed the board of public instruction had but one fund and that was a particular fund known as the common school fund.

So we have now a definite holding by the Supreme Court of Florida to the effect that if an instrument fails to state that it is

to be paid only and alone from a named fund and no other fund or funds either existing or to exist, it is a negotiable instrument regardless of the fact that there may in fact be no fund other than the one named and may be no other asset from which such bonds or warrants may be paid.

I think this construction is important enough that it should be called to the attention of the general public and particularly to those public corporations now so readily authorized to issue bonds and warrants for particular purposes payable out of particular funds such as the proposed State Toll Road. Under the new construction they will doubtless be fully negotiable.

As stated above, this is a common law action instituted before the advent of the so-called "new rules." Under the rules of common law pleading in effect at the time this suit was instituted one could not go into court suing for a bicycle and come out with a judgment for a Cadillac.

Evidently this writer has overlooked some provision made by the Supreme Court touching the applicability of the new rules on litigation pending before and at the time the new rules became effective (for which I have searched faithfully). This must be so because the Supreme Court has issued its mandate to this court requiring that a new trial be granted upon an issue that is not made, presented (or hinted at) by the pleadings in this case—an issue not before either this court or the Supreme Court. I am not aware of any rule either under the "old rules" or the "new rules" which authorizes or allows new issues to be injected into a case in the Supreme Court. I have evidently completely failed to recognize or comprehend the scope of procedure under the new rules.

A new hearing was had for that purpose, but the pleadings were in no wise changed and there will not be found at any place in the pleadings any claim by the plaintiff that he purchased or acquired any part or residue of the Citizen's Bank of Bushnell debt from the Union Trust Company of Baltimore. The issue stands as it was made by the pleadings in 1947 that plaintiff is the holder in due course of the twenty warrants involved.

Plaintiff by his pleadings has not seen fit to define by allegation any claim of the ownership of any lien by reason of those warrants to which the defendant might plead or against which it might prepare a defense.

In 1927 the Citizen's Bank of Bushnell ("the bank" hereafter) was heavily indebted to the Union Trust Company of Baltimore

("the trust company" hereafter) and gave to that company three notes in the principal amount of $9,493.65 each. At the new trial plaintiff verbally claimed a pledge of these warrants, at that time, for the purpose of securing these three notes—but there is not one scintilla of proof that any such pledge was ever made.

In the first place, it is admitted that the warrants were not then in the bank's possession and it is not claimed that any renegotiation of the warrants was made between the parties. At that time the bonds were in the trust company's possession where they had been placed with an offer to secure the sum of $22,500—but the trust company did not accept the offer.

In the second place, the sole support of this claim of a pledge to support the alleged lien is what purports to be a resolution passed by some sort of a committee called the "executive committee" of the bank. What the origin or purpose of this "executive committee" was is not shown, nor is it shown that such committee had any authority to make any pledge or to authorize any pledge. Further than this, the resolution, if it does anything, simply authorizes a pledge to be made by either the president or the cashier of the bank and the record does not show by any evidence or proof whatsoever that either of these officers ever undertook to make any such pledge. In addition to all these facts the record distinctly discloses that the trust company knew that the bank was to all intents and purposes closed and could not at that time meet its obligations to its depositors or other creditors. It therefore follows that had any pledge been attempted it would have been fraudulent as giving the trust company preference over other creditors of the bank, to the prejudice of the depositors and other creditors.

There is not to be found in the record anywhere any evidence or suggestion that the trust company intended to or did assign to the plaintiff any part of the former indebtedness of the bank to the trust company.

The record does show that the trust company desired to obtain title to the warrants and that in order to do so the company by agreement with the liquidator of the bank settled and discharged all the bank's indebtedness in exchange for such title as the bank had to the warrants and actually surrendered and delivered all notes of the bank which it held to the liquidator. Hence, the trust company had nothing which it could sell or transfer to the plaintiff or anyone else—other than such title to the warrants as it acquired from the liquidator with full knowledge of the defense against them. See 77 So. 2d 435, at page 438—"And although the

trial court made no specific finding on the point, it is equally clear from the evidence that prior to this transaction with the liquidator the Trust Company had notice of alleged defects in the instruments and consequently did not become a holder in due course *by virtue of that transaction.*"

The bank had been placed in liquidation before this deal between the liquidator and the trust company. The warrants acquired by the trust company through the deal with the liquidator were not *in lieu of* the bank's debt to the trust company—but *in full payment of* such debt. There is no reservation or provision to be found in the exchange between the liquidator and the trust company whereby any shadow of the bank's indebtedness is kept alive. This was a new deal by which the liquidator exchanged the warrants (bank assets) for the bank's liabilities to the trust company and the company, in exchange for the warrants, discharged and satisfied the debt in full.

The trust company employed as its Florida attorneys in this transaction with the liquidator one of the ablest firms of the day, Knight, Thompson & Turner, of Tampa. These attorneys handled the matter of securing title to the warrants for the trust company. If the trust company had held or claimed a lien against the warrants, these attorneys would most certainly have advised them how to obtain title to the warrants without jeopardizing their position in any way by the simple expedient of sale as provided by the then effective Florida statute, section 4845 (3101), Revised General Statutes of Florida, 1920, vol. 2, which reads as follows—

> *Sale of collateral securities.*—In all cases in which any stock in a corporation, contract, obligation, security or evidence of indebtedness, shall be pledged or deposited as security for the payment of any indebtedness, the person or corporation to whom the same may be pledged, hypothecated or transferred, and their assigns, shall have the power to sell the same in such manner and on such terms as may be agreed upon in writing by the parties at the time of making the pledge, and such sale shall vest in the purchaser or purchasers the title in and to said pledges, collaterals or securities: Provided, Ten days' notice of said sale be given to the party pledging the same.

The Supreme Court has held that one who holds property of the nature of these warrants as security for a debt cannot sell the pledged property in the absence of a special power of sale in the contract. Gables Racing Ass'n v. Persky, 156 So. 392. It is evident from what has been stated that the only course left for the trust company to obtain title to the warrants was that which was suggested by their attorneys, Knight, Thompson & Turner, and followed.

What everyone knows, the court is supposed to know and one of the best known facts in Florida is that at the time of the bank's failure when a majority of the banks in the state, large and small, failed and went into the hands of liquidators and the counties were threatened with liquidation, little attention was paid to what few assets the banks had. The fact that the term "security" is mentioned in the bill of sale of these warrants from the liquidator to the trust company meant nothing then and means nothing now. The liquidator knew that he was trading nothing for nothing and getting closer to winding up and finishing a pesky job that meant no money to him. The trust company knew that they were trading nothing so far as the indebtedness of the bank was concerned for these warrants out of which they hoped eventually to squeeze a few dollars at the expense of the school children of Sumter County. The company at that time had full knowledge of the fact that the bank had obtained the warrants through fraud and that there had been at best almost a complete failure of consideration passing from the bank to the Board of Public Instruction of Sumter County.

The liquidator obtained a complete discharge and release of the bank's debt, together with return and surrender to him of all evidence of any such indebtedness.

It therefore follows that no lien could have been obtained or held by the trust company against the warrants for the bank's debt unless one discards all common sense and reason in favor of the financial scavengers who came to Florida in droves in those days to feast on the economic wreckage of the banks, school systems, counties, cities, towns and other taxing districts too numerous to mention.

I do not understand the decision of the Supreme Court to require me to find the value in dollars and cents of something which the plaintiff has failed to prove, which in his pleading he did not claim existed. Nor do I understand the opinion of the high court to mean that that court adjudicated that a lien actually existed for which the defendant is liable, but I understand the decision to mean that there was the possibility of the existence of such a lien and that the plaintiff should have an opportunity to present such an issue to the court and to prove it. This he has utterly failed to do.

I find that the plaintiff has failed to establish any lien, or the value in dollars and cents of any lien.

The record shows conclusively that both the trust company and the plaintiff, Ed C. Wright, acquired title to these time warrants

with full knowledge and notice of the defects in the instruments and were not and are not holders in due course, but acquired the warrants subject to the same and all defenses which the defendant board could have sustained against the bank.

The record shows conclusively that the bank was guilty of the grossest fraud in obtaining the warrants from the board originally and that due to the bank's fraudulent acts in connection with these time warrants the defendant actually received no value from their sale. I think no one will dispute the proposition that the bank if it were in existence today and held these warrants would not be entitled to recover anything on them in any suit it might bring against the defendant. Plaintiff is in no better position than the bank would be, and I therefore find in favor of the defendant and against the plaintiff.

It is ordered and adjudged that plaintiff take nothing by his suit and that defendant go hence without day.